IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

| | |
|---|---|
| **RUSSELL BRANDS, LLC**<br><br>**Plaintiff,**<br><br>v.<br><br>**BEAST HOLDINGS, LLC, GAMECHANGER247, LLC, and MRBEASTYOUTUBE, LLC**<br><br>**Defendants.** | Case No.: 1:25-cv-107-GNS<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Russell Brands, LLC ("Plaintiff" or "Russell"), by and through its undersigned counsel, hereby submits its Complaint against Defendants Beast Holdings, LLC, GameChanger247, LLC, and MrBeastYouTube, LLC (collectively, "MrBeast" or "Defendants"), and alleges as follows.

## NATURE OF THE ACTION

1. This is an action brought under the trademark laws of the United States, including the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, for trademark infringement, unfair competition, false designation of origin, and under the common law of the Commonwealth of Kentucky.

## THE PARTIES

2. Plaintiff Russell Brands, LLC is a Delaware limited liability company with a principal place of business at One Fruit of the Loom Drive, Bowling Green (Warren County), Kentucky 42103.

1

3. On information and belief, Defendant Beast Holdings, LLC is a North Carolina limited liability company with a principal office address at 740 SE Greenville Boulevard Ste. 400-163, Greenville (Pitt County), North Carolina 27858.

4. On information and belief, Defendant GameChanger247, LLC is a North Carolina limited liability company with a principal office address at 740 SE Greenville Boulevard Ste. 400-163, Greenville (Pitt County), North Carolina 27858.

5. On information and belief, Defendant MrBeastYouTube, LLC, is a North Carolina limited liability company with a principal office address at 740 SE Greenville Boulevard Ste. 400-163, Greenville (Pitt County), North Carolina 27858.

6. On information and belief, Defendants are all part of an extensive business enterprise associated with popular internet personality MrBeast, a/k/a/ Jimmy Donaldson.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1338 (civil action arising under any Act of Congress relating to trademarks), and 1367 (supplemental jurisdiction).

8. This Court has personal jurisdiction over Defendants because Defendants transact business in this judicial district and the conduct described herein is causing harm to Plaintiff in this judicial district.

9. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(2) and L.R. 3.2(a)(3)(A) and (d), because Plaintiff's principal place of business is located in this district and division, and a substantial part of property that is the subject of the action is situated in this judicial district and division.

**Background**

**A.    Russell and its Spalding Division**

10.    Russell is one of the largest and best-known manufacturers and marketers of branded sports equipment, sports apparel and uniforms, and athletic, active, and casual sportswear.

11.    Russell offers goods under several flagship brands, including SPALDING, used primarily in connection with sports balls and accessories for various sports, including basketball, football, volleyball, and baseball.

12.    Russell's predecessor in interest acquired the SPALDING company and brand in 2003, which became a division of Russell.

13.    In 2006, Fruit of the Loom, Inc. acquired Russell's predecessor, which became Russell Brands, LLC.

14.    Russell's Spalding division is the largest basketball equipment supplier in the world.

15.    In addition to its flagship SPALDING brand, Russell also owns a number of valid and subsisting registrations and common law rights for various product sub-brands that it uses in connection with its basketball and other sports equipment.  These marks are valuable intellectual property assets of Russell, and Russell has invested substantial time, money and effort to promote its goods offered under those brands, which have gained widespread popularity and renown among the applicable consuming public.

**B.    Russell's Registration and Use of THE BEAST in Connection with Basketballs and Basketball Equipment**

16.    Since at least as early as 2002, Russell has offered basketball equipment and basketball-related accessories under the trademark THE BEAST®.

17. Russell owns the following valid, subsisting, and incontestable U.S. trademark registrations for its THE BEAST Mark:

| MARK | REG. NO. | GOODS |
| --- | --- | --- |
| THE BEAST | 2689481 | Basketball equipment, namely, blow-molded, water-filled bases for use with portable basketball systems |
| THE BEAST | 3944580 | Basketball equipment, namely, basketball backboards and portable basketball units containing a base, pole, backboard and goal |

18. Russell also has developed substantial common law rights to the mark THE BEAST™ for use in connection with basketballs, which it has sold bearing that mark since at least as early as 2012, as shown below:



(collectively, Russell's THE BEAST registered and common law rights in its THE BEAST mark shall be referred to collectively as "Russell's THE BEAST Mark").

19. Russell's THE BEAST Mark is a valuable intellectual property asset, and Russell is committed to protecting its value by ensuring Russell's THE BEAST Mark remains exclusively associated with Russell and its SPALDING brand.

20. Russell has maintained substantial and exclusive use of its THE BEAST Mark for many years.

**C.      Defendants and Their Sale of BEAST Basketballs and Footballs.**

21.     On information and belief, Defendants are business entities formed to promote the various ventures associated with James Stephen "Jimmy" Donaldson, commonly known by his online persona "MrBeast."

22.     The MrBeast persona has hundreds of millions of subscribers to various social media accounts and channels, which has generated tens of billions of views for his online endeavors.

23.     In addition to its content generation through various online platforms, MrBeast also promotes the MRBEAST brand through the sale of collateral merchandise that features the MRBREAST name and designs, including toys, candy, apparel, school supplies, and accessories, which it offers or has offered for sale through various online outlets, including its own online retail store at https://mrbeast.store, Amazon, Shopify, and through Wal-Mart com as a "Walmart Marketplace seller."

24.     Russell learned that MrBeast was offering for sale through these outlets sports balls, including basketballs and footballs, bearing the mark BEAST, as shown below:

| Image | Online Location |
|---|---|
|  | MrBeast.Store |
|  | Walmart.com |

| Image | Online Location |
|---|---|
|  | Amazon.com |

25.     Upon learning that MrBeast was using a virtually identical mark as Russell's THE BEAST Mark in connection with the sale of basketballs, in May 2024 Russell sent a letter advising MrBeast of Russell's objection to this unauthorized use of a confusingly similar mark in connection with the sale of basketballs.

26.     Former counsel for MrBeast, Kevin Sayed, acknowledged receipt of Russell's correspondence, and indicated that its president, Mac Hustveld, had reached out directly to Russell executives to discuss "potential business resolutions in lieu of a legal resolution."

27.     In or around Summer of 2024, business and legal representatives attempted to negotiate a business resolution of this matter, but no resolution was reached.

28.     Thereafter, the negotiating team from MrBeast became unresponsive, and in early 2025, Russell learned that MrBeast continued to sell basketballs and footballs bearing the BEAST mark on the MrBeast.Store website, despite actual knowledge of Russell's trademark rights in and to Russell's THE BEAST Mark.

29.     In early-February 2025, Russell sent a second letter to MrBeast, again demanding discontinuation of its sale of basketballs or related goods in connection with the marks BEAST, THE BEAST, MRBEAST, or any confusingly similar variations thereof, as well as a detailed accounting and written assurances with respect to future conduct. Russell requested a response to that letter within ten days.

30. MrBeast did not respond to that correspondence within ten days, but instead, in mid-March, 2025, a MrBeast representative reached out to Russell, advising there had "been some team changes over the past few months resulting in the drop of communication," and again, representatives of MrBeast indicated that it wished to resume business negotiations.

31. In early-April 2025, representatives for Russell and MrBeast had another conference to discuss this matter, during which MrBeast representative Travis Anderson indicated that MrBeast did not want or intend to stop selling BEAST basketballs, and in fact, was negotiating with a well-known specialty apparel and accessory retailer to expand such sales into brick-and-mortar retail stores in 2025.

32. On April 10, 2025, a MrBeast representative who described himself as "a member of the MrBeast in-house legal team" finally responded to Russell's February 3, 2025 demand letter, in which MrBeast indicated it had discontinued all sales of BEAST basketballs, gave a cursory "accounting" by stating the number of balls sold and the net sales amount, and indicated it would refrain from future sales, "subject to future discussions…between the parties."

33. The representations made in the April 10, 2025 correspondence, however, were not true: MrBeast continued to sell and offer for sale basketballs and footballs on the MrBeast.store website.

34. MrBeast continued to sell basketballs and footballs through the MrBeast.store website through at least May 5, 2025, when counsel for Russell again communicated with MrBeast, renewing its demand for cessation of the accused conduct and a financial settlement to address prior misconduct.

35. As of May 14, 2025, MrBeast was no longer selling basketballs or footballs through the MrBeast.store website, but as of early-June 2025, the infringing balls were still displayed on the MrBeast Amazon page, as well as a non-indexed page on the MrBeast.store website:



36. On June 11, 2025, counsel for MrBeast provided a letter in response to Russell's May 5, 2025 letter, indicating that "as of May 8, 2025, basketballs bearing the BEAST trademark have been removed from the Mr. Beast Store Website," and that prior representations about such

removal had been incorrect "due to a technical oversight." The letter also provided updated sales information but stated that any monetary settlement would be "premature" due to ongoing discussions with Russell seeking a collaboration.

37. Despite representations in its June 11, 2025 correspondence concerning the desire to reach a business resolution, no meaningful communications have taken place, and it is apparent the parties are not likely to reach an amicable business resolution of this matter.

38. As of August 11, 2025, the infringing basketball is still displayed on the MrBeast Amazon store, with a caption that states, "Currently unavailable. We don't know when or if this item will be back in stock." The infringing ball also remains displayed on Shopify as well.

### D.  **Defendants' Conduct is Harming Russell**

39. To date, Russell has not been compensated for MrBeast's past acts of infringement, nor has it received any assurances that such misconduct will not resume in the future.

40. Russell adopted and has been using Russell's THE BEAST Mark since at least as early as 2002 in connection with basketball equipment, and since at least as early as 2012 in connection with basketballs.

41. Defendants' subsequent adoption and use of the virtually identical BEAST mark is likely to cause confusion with Russell's THE BEAST Mark because they are functionally identical and confusingly similar in sight, sound, and overall commercial impression.

42. The sporting goods offered by MrBeast under the BEAST mark are identical and/or highly related to the goods Russell has offered under Russell's THE BEAST Mark since long before Defendants' use of its BEAST mark in connection with such goods.

43. Defendants' use of BEAST in connection with sports balls encroaches on the channels of trade and customers with which Russell has used Russell's THE BEAST Mark since

well prior to any priority date Defendants may claim and therefore infringes Russell's common law rights in its THE BEAST Mark.

44. Defendants' goods bearing the mark BEAST are advertised and sold through the same trade channels as Russell's THE BEAST goods and services, namely the Internet and social media.

45. As a result of Defendants' actions, Russell was required to hire the law firm of Thompson Hine LLP, and is obligated to pay its attorneys a reasonable fee for their services.

## COUNT I
### (Federal Trademark Infringement)
### 15 U.S.C. § 1114

46. Russell incorporates by reference the allegations of Paragraphs 1-45 above.

47. Russell owns valid, subsisting, and incontestable U.S. trademark registrations for its THE BEAST Mark.

48. Defendants' unauthorized use in commerce of the mark BEAST in connection with its advertising, marketing, and provision of basketballs, footballs, and other sports equipment, as alleged herein, is likely to cause confusion, to cause mistake, or to deceive consumers as to the source, origin, affiliation, connection or association of Defendants' goods, and is likely to cause consumers to mistakenly believe that Defendants' goods have been authorized, sponsored, approved, endorsed, or licensed by Russell, or that Defendants are the same as or are in some way affiliated with Russell or the goods and services that Russell offers under Russell's THE BEAST Mark.

49. Defendants' acts, alleged herein, constitute willful federal trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

50. By reason of Defendants' actions, Russell has suffered irreparable harm to its valuable THE BEAST trademark and the goodwill associated therewith. Russell has been, and unless Defendants are preliminarily and permanently restrained from their actions, will continue to be irreparably harmed.

51. As a direct and proximate result of Defendants' conduct, Russell has suffered and will continue to suffer damages in an amount to be proved at trial.

## COUNT II
### (Trademark Infringement, Unfair Competition, and False Designation of Origin) 15 U.S.C. § 1125(a)

52. Russell incorporates by reference the allegations of Paragraphs 1-51 above.

53. Russell owns valid, subsisting, and incontestable U.S. trademark registrations and common law trademark rights for its THE BEAST Mark.

54. Defendants' unauthorized use in commerce of the BEAST mark in connection with its advertising, marketing, and provision of basketballs, footballs, and other sports equipment, as alleged herein, is likely to cause confusion, to cause mistake, or to deceive consumers as to the source, origin, affiliation, connection or association of Defendants' goods, and is likely to cause consumers to mistakenly believe that Defendants' goods have been authorized, sponsored, approved, endorsed, or licensed by Russell, or that Defendants are the same as or are in some way affiliated with Russell or the goods and services that Russell offers under Russell's THE BEAST Mark.

55. Defendants' acts, alleged herein, constitute trademark infringement, unfair competition and false designation of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

56. By reason of Defendants' actions, Russell has suffered irreparable harm to its reputation and goodwill associated with Russell's THE BEAST Mark. Russell has been, and unless Defendants are preliminarily and permanently restrained from their actions, will continue to be irreparably harmed.

57. As a direct and proximate result of Defendants' conduct, Russell has suffered and will continue to suffer damages in an amount to be proved at trial.

## COUNT III

### (Common Law Trademark Infringement)

58. Russell incorporates by reference the allegations of Paragraphs 1-57 above.

59. Russell's THE BEAST Mark is valid and protectable.

60. Russell's use of its THE BEAST Mark was deliberate and continuous over a span of many years.

61. Defendants' unauthorized use of Russell's THE BEAST Mark and wrongful actions as alleged herein are likely to cause confusion about the source or origin of goods and service in violation of the laws of the Commonwealth of Kentucky and Defendants are and will unfairly profit from using a mark that is confusingly similar to Russell's THE BEAST Mark.

62. The acts of Defendants complained of herein constitute trademark infringement in violation of the common law of the Commonwealth of Kentucky.

## COUNT IV

### (Common Law Unfair Competition)

63. Russell incorporates by reference the allegations of Paragraphs 1-62 above.

64. Russell's THE BEAST Mark is valid and protectable.

65. Russell's use of its THE BEAST Mark was deliberate and continuous over a span of many years.

66. Defendants' unauthorized use of Russell's THE BEAST Mark and wrongful actions as described herein are likely to deceive consumers to believe, contrary to fact, that Russell authorized the use of Defendants' THE BEAST Mark or that Defendants are somehow affiliated with Russell, despite the fact that no such authorization or affiliation exists.

67. Defendants are and will unfairly profit from using the BEAST mark that is confusingly similar to Russell's THE BEAST Mark.

68. The acts of Defendants complained of herein constitute unfair competition in violation of the common law of the Commonwealth of Kentucky.

## COUNT V

### (Unjust Enrichment)

69. Russell incorporates by reference the allegations of Paragraphs 1-68 above.

70. Defendants are unlawfully using Russell's THE BEAST Mark and benefiting from the same at the expense of Russell.

71. It would be unjust for Defendants to retain the profits they have created due to their unlawful use of Russell's THE BEAST Mark.

72. The acts of Defendants complained of herein constitute unjust enrichment of Defendants at the expense of Russell, in violation of the common law of the Commonwealth of Kentucky.

## **RELIEF REQUESTED**

**WHEREFORE**, Russell requests that this Court enter Judgment in its favor of that:

A. Defendants, their affiliates, officers, directors, agents, representatives, attorneys, and all persons acting or claiming to act on their behalf or under their direction or authority, and all persons acting in concert or participation therewith, be preliminarily and permanently enjoined from:

  i. using the mark BEAST, THE BEAST, MRBEAST, or any confusingly similar mark or colorable imitation thereof in connection with the promotion, advertisement, display, sale, or distribution of basketballs, footballs, or other athletic equipment by Defendants or any of its affiliates;

  ii. performing any act, making any statement, or distributing any materials that are likely to lead members of the public to believe that any goods Defendants provide are associated or connected with Russell, or are sold, licensed, sponsored, approved or authorized by Russell;

  iii. otherwise taking any action likely to cause public confusion, mistake, or deception as to the connection, affiliation, sponsorship, approval, or other association of Defendants' goods or services with Russell or its goods or services;

B. For an order awarding damages pursuant to 15 U.S.C. § 1117 and Kentucky law, including but not limited to Defendants' profits associated with its sale of basketballs, footballs, or other sports equipment, Russell's damages and costs, and treble damages as permitted thereunder;

C. For an order directing Defendants to file with this Court, and serve upon Russell's counsel within thirty days after entry of such judgment, a written report under oath, setting forth in detail the manner and form in which it has complied with such judgment;

D. For an award of Russell's costs and disbursements incurred in this action;

E. For an order awarding attorneys' fees for violation of the Lanham Act and Kentucky law, or as otherwise allowed by law or equity;

F. For an award of interest, including prejudgment and post judgment interest at the statutory rate; and

G. Any other additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(c), Defendant-Counterclaim Plaintiff demands a trial by jury on all issues so triable.

Dated: August 12, 2025                    Respectfully submitted,

*/s/ Carrie A. Shufflebarger*
Carrie A. Shufflebarger (KY. Bar #90507)
Brianna D. Vollman (*Pro Hac Vice* forthcoming)
THOMPSON HINE, LLP
312 Walnut Street, Suite 2000
Cincinnati, Ohio 45202
Tel: (513) 352-6678
Email: carrie.shufflebarger@thompsonhine.com
Email: brianna.vollman@thompsonhine.com

*Attorneys for Russell Brands, LLC*